The next case called is No. 120343, Board of Education, Springfield School District No. 186 v. The Attorney General of Illinois, Agenda No. 4. Counsel, ready? You may begin. Thank you. May it please the Court and Counsel, my name is John Schmidt. I'm an Assistant Attorney General, and I'm representing the Attorney General in this case. The Attorney General issued binding opinions finding that the Board of Education violated Section 2E of the Open Meetings Act. And those binding opinions under the Open Meetings Act essentially have the force and effect of final administrative decisions. So the Attorney General was acting as an administrative agency. And she does that when she receives complaints of OMA violations and also Freedom of Information Act violations. In this case, the Attorney General interpreted Section 2E as requiring public bodies to inform those who are attending open meetings of the business being conducted. The Attorney General asked this Court to affirm those binding opinions, which are consistent with OMA's purpose of keeping the public informed about public business. Now, Section 2E contains two sentences. It's a short provision. The first sentence says, no final action may be taken at a closed meeting. Sentence 2 says that final action shall be preceded by a public recital of the nature of the matter being considered and other information that will inform the public of the business being conducted. This appeal focuses primarily on the second sentence, on the proper interpretation of that public recital requirement. Is that term ambiguous, counsel? The term public recital? Yes. I believe there is some ambiguity in that second sentence. And the ambiguity would be as to when and where the public recital must take place. What about the content of the recital? Perhaps it could be considered ambiguous, too, in terms of the content of the recital. If it is, we would suggest that the interpretation should take into account OMA's purpose, as declared in Section 1, of keeping the public informed as to public business. In terms of the content, the Attorney General feels that the appellate court was wrong to say that Section 2E only requires public bodies to recite the general nature of the proposed final action. The language requires more. It also requires information that will inform the public of the business being conducted. And, Justice Garmon, perhaps that's where the ambiguity as to content would come in. What would inform the public of the business being conducted? This particular case involved a separation agreement with the Board of Education's superintendent. And the Attorney General, in attempting to enforce this language, said that at the very least, it would include the key terms, the important terms of the contractual provision. Mr. Schmidt, with regard to Justice Garmon's question, though, in this particular case, did the Board ever withhold any information regarding the separation agreement from the public? It was posted on the website? That is true that it was posted on the website as part of the agenda. And I'm going to say that was commendable for the Board to do that. We think the Board actually went beyond the agenda requirements, which are in Section 2.02C of OMA. Because the agenda requirement, it only requires the general nature. It only requires that the public body mention the general nature. So we believe that's commendable. But the Attorney General interpreted that second sentence as requiring that the public recital take place, actually, at the meeting where the final action. That's not in the statute, though. Your Honor. And let me just phrase it in this way. The link to the separation agreement that Justice Burke is talking about, why is that not the other information that would inform the public of the business being conducted? Because of the Attorney General's conclusion that this would have to take place, the public recital would have to take place at the meeting, Your Honor. Wouldn't that require us to write more into the statute? I don't think so, Your Honor, and I'll discuss why. First of all, the key word, I think, is phrases preceded by. We think that can be interpreted as either before or immediately before. And there is some language in the statute that we believe indicates that immediately before would be the proper interpretation. The statute talks about informing the public of the business being conducted, which we think suggests using being conducted instead of to be conducted suggests being conducted now or being conducted contemporaneously, which suggests at the meeting itself. That construction would also give a definite time and place where the public recital must take place. It would also be consistent with viewing the statute as a whole, because the statute does contain separate requirements for agendas and for the public recital. And basically, as the Attorney General said in one of the opinions, the agenda is designed more to inform the public, give the public information that might enable it to decide whether to attend the meeting. But at the meeting, the public should be able to understand what's going on. But, Justice Thomas, I would like to mention, if you do end up disagreeing with us on that, we would ask that the court address the language or what I said before, the portion of the appellate court's opinion in Section 42, or Paragraph 42, I'm sorry, Your Honor, which basically said that the public recital requirement only requires the public body to recite the general nature. We think that's clearly wrong under the plan language. If you conclude that the agenda could satisfy, we don't think that you should conclude that. If you do, we would ask that you say that, nonetheless say that that language in Section 42 was wrong, that the recital must still contain information that would inform the public of the business being conducted. And in this case, if you considered the agenda, it would, because it contained the whole separation agreement. But we would ask that your rationale would be different than the appellate court's in that situation. At the meeting, the President of the Board called this resolution, indicated what it was about. It was the separation agreement released between the Superintendent and the Board of Education. She called for discussion.  And your argument here is that that discussion was insufficient to meet this public recital requirement. Are you asking that in every board meeting that the entirety of every contract be read aloud or something less? And if something less, where do we see in the statute what, in fact, is required? Definitely something less, Your Honor. And the Attorney General explicitly stated in, I believe, the second binding opinion, that reading the entire contract certainly would not be required. What the Attorney General was doing was taking that phrase, that the public recital must contain other information that will inform the public of the business being conducted, and trying to apply it to this situation, which involves a contract in which the school district was discharging perhaps its most important official, and saying the Attorney General concluded to know, to be informed of what was going on there, that at least some of the important terms should have been summarized. But this would certainly apply to every agenda item on every public entity, correct? I think it would, Your Honor, yes. So is there any direction that we in this opinion should be giving to every public body as to what those important, I'm not sure what the term is, important aspect of every one of the contracts they voted on? Should we be in a position to say they must explain the amount of the contract and the details of the contract and the purpose of the contract? Is that what we should be doing here? I think by its nature, this is something that has to be done on a case-by-case basis. I think that the Court might be able to illustrate things that would constitute key terms, and I think amounts of money, amounts of public money being spent would be one thing, and the Attorney General did focus on that as one of the things that should have been disclosed here. And we understand that this might not be an exact science for public bodies. In this case, though, none of the terms were disclosed, and the Attorney General saw that as a problem. The public, some of the amnesty or amici have mentioned the possibility of substantial compliance, and there is some case law indicating substantial compliance with OMA can be sufficient. Perhaps in a case where a court deemed that one term should have been in or should have been mentioned by a public body that wasn't, but several were, perhaps that could be substantial compliance. Here there were none, though. Mr. Smith, certainly from a policy standpoint, I appreciate the Attorney General's position. The more information that the public is given about what is going to happen in a meeting, probably the better. But you started by talking about the brevity of the statute and just taking Justice Tice's question regarding permutations and how it applies to different factors. Isn't that best left to the legislature to decide whether they want to embrace the Attorney General's opinions and expand on the statute? Well, again, we don't think this is an expansion of the statute. The Attorney General believes this is interpreting and applying to this case the language that public bodies must provide other information that will inform the public of the business being conducted. So we believe the language is there, and that's going to require different things in different cases. And we did suggest in our brief that, you know, of course it's not going to be an easy determination in some cases, but I think that's true often in terms of applying the law. And the law does often look at things through the eyes of a reasonable person. And in this case, what would a reasonable member of the public want to know? What would it be important to tell them? If the Board had copies, printed copies, of the separation agreement available, would that be sufficient? The Attorney General said in her opinion that the recital should be, had to be verbal and not written. However, I don't think the Court needs to decide that because the, decide that in this case, because there was no verbal or written discussion of the terms of the contract at the meeting. Was the contract posted somewhere? That was posted, as we acknowledge, as part of the agenda that was posted before the meeting. I don't mean online. You're making a distinction apparently about that if it's posted online that it's not contemporaneous. But was there a physical copy posted in the room? I don't believe there was a physical copy posted in the room. I would say under the binding opinion, no, it would not be sufficient. However, it would be, if this Court might disagree with that, and we would certainly acknowledge that that would be a good thing, and it would have certainly helped inform the people at the meeting who are interested in the contents of the agreement. So I would have to concede that, Your Honor. Mr. Schmidt, I want to make sure I understand the Attorney General's challenge here. I thought it was more than just what the public recital was prior to the March meeting. I thought your arguments go to what happened at the closed meeting in February. When preceding that, the superintendent signed the 19-page agreement in January. Then at that February 4th closed meeting, six of the seven council members signed the agreement but didn't date it. That's correct, Your Honor. You were arguing that that was, in effect, the de facto final action and that the public meeting was. But one reason, and in our binding opinion, in her first binding opinion,  but having reviewed this Court's decision in Grissom, Grissom appears to say that subsequent final action at an open meeting can sort of save the situation. But our position is, in this case, the subsequent final action at the open meeting did not save the situation because of the failure to meet this public recital requirement at the meeting. So, therefore, the purported final action at the March 5th meeting would not, in the Attorney General's view, have been valid. But you're no longer arguing that the signing at the closed session was considered final action? No, we're really not, Your Honor. Counsel, what rule are you asking us to enunciate? This is going to set precedent, and we sure don't want to encourage every time a public body has an issue like this to come up before us and, is it enough or isn't it enough? Because you said it's a case-by-case. So how are we going to, how do you want us to articulate this? I think as that, the language I mentioned, and the other information that will inform the public of the business being conducted language, in the context of a case that involves a public contract, that would require at least a summary, and I emphasize the word summary, as the Attorney General did, of the important terms of that agreement. We think that is necessary to inform the public of the business being conducted in cases that involve public contracts. So for the reasons that I've set forth, we would ask that the Attorney General's binding opinions be upheld. Thank you, Your Honor. Thank you, Mr. Schmidt. Ms. Burkett. Good afternoon, Justices. I'm Laura Lee Burkett, representing District 186. Counsel, may it please the Court. In the reply brief, the Attorney General has argued, although they have previously admitted that the standard of review today is de novo, a standard that is independent and not deferential, in their reply brief, they have argued that because the matter presented to the AG was one of first impression, that a well-reasoned opinion then would be entitled to some deference. Neither of these binding opinions are entitled to deference for the very reason that they were not, in fact, well-reasoned. In the first binding opinion, the AG determined that the District Board violated Section 2E, in part because the public vote was not preceded by a sufficient public recital. The AG found this despite the fact that they had never been requested to review this issue, as required by Section 3.5B of the Act, and more importantly to our case, they did it without providing the Board an opportunity to respond to this issue as required by 3.5C. That binding opinion then did not comply with the statute giving the AG the authority to issue it. So, it cannot be considered to be a well-reasoned opinion. The Circuit Court remanded the case, and so then, of course, the Board did have an opportunity to respond. And so, in the second opinion, the binding opinion, the AG found the same violation of Section 2E, but based on language she substituted for the language that was chosen by the legislature. And it is certainly our contention, and as the Circuit Court and Appellate Courts both found, that that language is not ambiguous. Ms. Burkett? Yes. You heard Mr. Schmidt talk about, even if we disagree with him and therefore agree with you, that this Court's analysis should refute Section 42 of Paragraph 42 of the Appellate Opinion, which reads that 2E of the Act requires that the public entity advise the public about the general nature of the final action, and then goes on to say that the AG is wrong. It doesn't require that the public body provide a detailed explanation about the significant impact of the proposed final action. Do you dispute that a different analysis is required here, or do you agree with Paragraph 42? No, we do not agree with Paragraph 42, and do not think that the Attorney General's analysis is correct in this regard. And the reason for that is there are no parameters. The AG added language to the statute requiring more of the board than the statute actually requires, but didn't provide any parameters as to what that means. What the statute actually requires is merely a public recitation of the nature of the matter being considered and other information that will inform the public of the business being conducted. There is a difference between educating people and making sure they comprehend something and informing them. The statute requires only that the public is informed. This Court has many times protected the deliberative processes involved in closed meetings, and what the Attorney General argued at the first hearing before the Circuit Court was that, no, the board had to tell all the people why they voted the way they did, and they had to read the agreement verbatim. In response to the Court's response to that, the AG tempered that in the second binding opinion. But they still require something that the legislature has not required, and which, frankly, is unworkable. The AG tithes the board and the amici for their argument that her approach to this is unworkable, saying that the mere inconvenience to the board is the price that's fair to pay for keeping the public informed. This is not a matter of mere inconvenience. Even a district the size of District 186 had a consent agenda that ran 32 pages long with 10 entries on it, all fine print, all containing contracts. Now, how is the board to know which of those contracts is so significant in the eyes of the Attorney General that the key terms, and which are the key terms, must be read and detailed at a meeting so the public at that meeting will know what was occurring? The consent agenda is available on the website. Everyone can see how much is being spent. The most ordinary of transactions often cost millions of dollars. I ask the court to think of CPS and the vendor who supplies that district with food. Clearly, that expenditure would be much, much higher than the expenditure involved here. What about the University of Illinois and the vendor who supplies them with office equipment? Again, an expenditure much, much higher than involved here, but a very, very ordinary transaction. How is a board to know which is which? Is it your position, counsel, that considering that the agenda that was posted online included the contract, or the proposed contract, and assuming that that would satisfy the public notice requirement, that introducing the agenda item in the motion alone were sufficient to satisfy the public recital? Yes, I do believe that the way that the item was introduced was sufficient. We have to have a public recitation of the nature of the matter being considered. This does not say a public recitation of the detailed, of the exact matter being considered, or including all details of the matter being considered, but the nature. The nature of this matter was introduced by the President when she said, when she called for a motion stating, we're on agenda 9.1, approval of a resolution regarding a separation agreement. That was the nature of the matter being considered, a vote on a separation agreement. Then as to other information that will inform the public of the business being conducted, the President said she recommended that the board vote to approve the separation agreement. between the then superintendent and the board. That was the amount of information about the issue, or the business being conducted. That business was the separation of the employment of the superintendent from the district. That was clear from that recitation. As to all of the detail that the NGA says must be included in the recitation, those were not included in the math course that was posted online. The NGA would like to separate section 2.02 from section 2E, even while Sidney had the provisions on the act must be read and agreed. But to try to say that an agenda is separate from a meeting, that it controls, is just ludicrous. An agenda is the very framework of the meeting. The meeting cannot progress without the agenda. And so to say the agenda is completely separate, great you say it like that, we commend you for going farther than you could or needed to, but that doesn't count anymore because now we're at the meeting. But the agenda is at the meeting too, it is part of the meeting. So I do believe that the public responded once again, but that this posting of the entire agreement was going farther than what the board needed to do. And then of course after the Board of President called for the motion, another board member moved that the resolution be tabled. And there was quite a lengthy recitation by the board member of why she did not believe Dr. Milton's employment should be separated, that he should continue on as superintendent. At the end of that, the board president asked if there was a second on that motion, caring then to call the vote on the first motion, which was to approve the resolution. And that vote carried on a roll call since tomorrow. Now Grissom and Jewell both recognized that the important moment is when the board sits in front of its public and on roll call vote says aye or nay. The public at that moment knows precisely what position each of those members have taken. And if they do not like it, their remedy is at the ballot box. They are free to find someone else to replace that person who goes for things they do not approve of. And so the people at the meeting and anybody watching on YouTube and anybody with access to the website or to a public library that gives you access to the website knew exactly what was going on. And frankly in the context of this case, you didn't even have to do that because the entire agreement was printed in the newspaper. So there wasn't any confusion at that meeting. But this case is bigger than just the context here. This case is one of those that will crowd public meetings into... It's such confusion. A meeting of the Elders in Chicago would last days and days if they had to explain key terms and figure out the key terms of every agreement. And on that point, Howard, what is key? Money to the AG apparently. But I would imagine to the superintendent's next employer was whether or not there was some kind of agreement preventing unemployment. It might be different to a parent or a child. And isn't... Oh, this list I have is official, but that's not always what's most important to the public. The boardroom is overfilled with people who want to coach a popular coach. It's like... Is that significant enough to require all the details that the AG has drafted onto this schedule? And if so, again, think of those meetings of the municipalities in the state from Chicago all the way down to the Los Alamos borders. Think of every district, school district, that has dozens or even thousands of agreements. But they approve every meeting. No member or very few members of the public, I should say, would be able to attend these meetings because they simply would last too long. The AG does the public no favor with her insistence on this level of detail. And this level of detail is not required by the legislature. The Attorney General argued that when it was amended to add the public prescriber provision, that the definitions of final action would change. And she settled to some legislative debate and a quote from Senator Phillips. Her entire quote and her final opinion was, according to my sponsor, the amendment provides a re-definition of final action elicits this clarification. What Senator Phillips actually said was, House Bill 2004, a monthly open meeting act, provides a re-definition of the word final action. Evidently, there was a little disagreement between the Attorney General and our state's attorney. This clarified it. I'll be happy to answer any questions. But there were no questions from the floor. There's no further detail anywhere in the entire legislative framework illustrating the little disagreement or the clarification of that little disagreement. What is known is only from the plain language that the legislature, though required, has used in the amendment and it did not re-define final action. It simply added a requirement preceding final action. As the appellate court said, the legislature does not make laws in speeches from the floor. They make laws with the majority vote only precise language chosen for a statute. And in this case, that precise language is all in English and requires only a general description of what is happening. Again, this is not a matter of education and being sure that folks comprehend it. This is a matter of informing people. The Attorney General does not have the authority to expand the statutory language. There was no basis on which she could do that. And the only reason, in the board's eyes, that that in fact happened was because she knew that Jewell and Grissom boasted for the proposition that the board did not take final action in a closed meeting. So there had to be more. And this is the more that she decided there was. So instead of requiring a public recitation of the nature of matters being considered, the AG substituted language that would require a board to give a simple explanation of the significance of the board. Instead of requiring other information that would inform the public of the business being conducted, the AG says that the board is required to inform the public of the key terms of agreements, or to provide the public with a summary of the permanent terms, or to provide the public with information from which they might comprehend the purpose and effect of the board's action. The AG even altered the term public. The term public is not ambiguous. But the AG altered it to mean the public who are in attendance at the public meeting. And it is a relief there that that was because the AG was quite aware that the district had posted the entire agreement on the website for an AC board meeting, and there could be no confusion about what was happening or what the board was doing. And of course the primary rule of statutory construction is to give effect to the plain and non-ambiguous language of the statute, because that is the best indicator of legislative intent. The AG was not constraining the statute, but was adding to it. We ask that this court affirm the appellate and circuit court decisions, and reverse the AG's first and second findings opinion. Thank you. Thank you, Ms. Burkett. Mr. Schmidt, rebuttal. Thank you, Your Honor. I'm going to just read something very quickly. The separation agreement calls for a payment of $177,796.92 to the superintendent, who will receive health insurance until May of 2014, indemnification of any lawsuits arising from his employment, and there are mutual covenants now to sue. That took about 30 seconds. That we believe would have complied with the public recital requirement by containing the key terms of the agreement. We don't think something like that is going to ambitiously lengthen public meetings. Mr. Schmidt, that has to do with this particular meeting, but what about other contracts in public recital? We believe that with regard to other contracts, that there should be similar summaries given at meetings, even if that does add to the terms of the meetings. And percent agendas were mentioned, but I think enforcing this requirement is even more important with consent agendas. If there is a consent agenda, there is no discussion, and I believe the way it works is several matters are ruled together and voted on at once. So that really creates a danger for the public view of what's going on. So we think it's even more important to enforce this kind of requirement. In your recitation, you cited the financials, basically, the amount, et cetera. You said also it was necessary to discuss the agreement covenant not to sue. My question goes back to how will the boards know which elements need to be discussed and which don't? Why is that so significant that that needs to be stated publicly? I think because when the public business is a contract, the only practical way to inform the public of what's going on is to mention something about what's actually in the contract. And that's why we think it's important to do that. Because my question is, you already agreed, not everything that's in the contract. Of course not. It's not even close to everything. So we're back to trying to figure out what it is that is required and maybe what's not required.  It's perhaps some other aspects of the agreement, like here, the covenant not to sue. How does an entity know what it's required? I think the best the Institute can do, and the world should do, again, apply a reasonable person standard. Try to put themselves in the shoes of a reasonable member of the public and inform the public of the most important terms of the contract. And I'd also point out the public bodies are the ones who have entered into this contract. They should have some idea of what was most important to them. And I think that could give them some insight in making this determination. But it's not going to be easy at all. So I'm not going to pretend that it is. But the statute, again, does require more than simply general information. Again, I'll repeat the point I made to Justice Collins. If you agree that the agenda was a no, that agendas can't satisfy this requirement, then it should be because the agenda didn't contain something to do with the contract. I don't think the Court should hold that the mere discussion of the general nature of this agreement at the meeting itself should be a no. We think the statute clearly requires more than that. Unfortunately, the legislature did word this other information phrase vaguely. And that does make it more difficult. As we pointed out in our reply, this is not the only situation at law where things could be looked at through the eyes of a reasonable person. The law does do that in other situations. Counsel also mentioned that the public could be aware of this through newspapers. But OMA doesn't really make this a requirement. It's not what's in the paper. A newspaper, for example, might mention that a public meeting is going on that would not excuse the public from complying with the notice requirements of OMA for public meetings. So the amount of publicity that the newspaper gets really, in our view, doesn't matter. The only further point I can make is that OMA exists primarily for the people. So I don't understand the business that's being conducted. I think if this court were to only interpret the public recital requirement as requiring discussion of the general nature of the contemplated final action, that would really, I think, defeat the purpose of OMA, because the public would get too happy to deal with it. I thank the court for its time. Thank you, Mr. Schmidt, Ms. Burkett, for your arguments today. The court will take case number 120343, Board of Education versus the Attorney General, under advisement as agenda number four. Mr. Marshall, the Supreme Court stands adjourned.